**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
**SULZER MIXPAC AG,**

                    **Plaintiff,**

                                                                      **COMPLAINT**

         **-against-**

**GALLETIS BUSINESS LLC and CARLOS**                  **TRIAL BY JURY DEMAND**
**G. BRAVO,**

                    **Defendants.**
-----------------------------------------------------------X

   Plaintiff Sulzer Mixpac AG ("Mixpac" or "Plaintiff") submits this complaint against defendants Gallettis Business LLC and Carlos G. Bravo ("Defendants") seeking damages, injunctive and other relief for trademark counterfeiting, trademark infringement and related claims, and alleges as follows:

## PARTIES

   1.  Plaintiff Sulzer Mixpac AG is a Swiss corporation with its principal place of business at Ruetistrasse 7, CH-9469 Haag, Switzerland.

   2.  Gallettis Business LLC (hereafter referred to as "Gallettis") is a Florida limited liability company, having a registered business address of 8865 Commodity Circle Ste. 14, UNIT 201, Orlando, FL 32819.

   3.  Defendant Carlos G. Bravo (hereafter referred to as "Bravo") is an individual and owner of Gallettis Business LLC with a business address of 8865 Commodity Circle Ste. 14, Unit 201, Orlando, FL 32819 who has acted together with Defendant Gallettis to actively participate in, or to control, the infringing activity accused herein.

## JURISDICTION AND VENUE

4.     This court has jurisdiction over Mixpac's trademark counterfeiting and trademark infringement claims under 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121.

5.     This court has personal jurisdiction over Defendants because they have transacted and are transacting business in this district and have sold, offered for sale, distributed, or advertised products that infringe Mixpac's registered trademarks in this judicial district. Defendants also have made, used, imported, sold, or offered for sale in the United States, including within this judicial district, products which infringe Mixpac's trademarks, specifically U.S. Trademark Registration  No. 3,762,232 (yellow), Reg. No. 3,762,233 (teal/green), Reg. No. 3,976,379 (blue), Reg. No. 3,976,380 (pink), Reg. No. 3,976,381 (purple), Reg. No. 3,976,382 (brown), and Reg. No. 4,051,261 (no color). Defendants have substantial and continuous contacts with New York and have committed acts of infringement in New York, including the Southern District of New York, sufficient to confer personal jurisdiction upon them.

6.     Venue properly lies in this court under 28 U.S.C. §§ 1391(b) and (c) because Defendants are subject to personal jurisdiction and have committed acts of trademark infringement in this district. Defendants' offering and selling their products in New York gives rise to proper venue as a substantial part of their infringing acts have occurred in this district.

## BACKGROUND

## THE MIXPAC THREE-PART MIXING SYSTEM

7.     Mixpac is the exclusive manufacturer in Switzerland of a proprietary three-part system for mixing two-part adhesives for dental applications. The system consists of 1) a dispenser-like caulking gun, 2) a cartridge containing a two-part chemical such as an

epoxy having a catalyst and a resin, and 3) a mixing tip that mixes the chemicals before they are applied for making, for example, an impression or mold for teeth.

## THE REGISTERED MIXING TIPS' COLORED DOME
## AND DOME MARK

8.    Mixpac has since at least as early as 1997 used a distinctive dome shape and color design Mark for its mixing tips (hereinafter "Colored Dome Mark").

9.    The Colored Dome Mark has been used to identify Mixpac's dental mixing system and tips.

10.    Mixpac's Colored Dome Mark includes the line of mixing tips with six pleasing "candy-like" colors of yellow, teal, blue, pink, purple, and brown ("Candy Colors"). The Colored Dome Mark also includes the Dome shape apart from the color ("Dome Mark").

11.    The Colored Dome Mark, Dome Mark, and Candy Colors are non-functional. They are not essential to the product's purpose, and they are not dictated by concern for cost efficiency. This is evidenced by other companies in the industry that use different designs and colors, or no colors, for their dental products, none of which include the Candy Colors, or the design features of the Colored Dome Mark.

12.    The Colored Dome Mark is distinctive and identifies a single source. Additionally, over for more than fifteen years the Colored Dome Mark has acquired secondary meaning as the relevant public has come to associate the Colored Dome Mark with a single source - Mixpac. Mixpac informs the dental public to "look for" the Colored Dome Mark and informs that the Dome and Candy Colors are trademarks. Purchasers choose mixing tips based on the Colored Dome Mark, Dome Mark, and Candy Colors.

## THE COLORED DOME AND DOME MARK U.S.
## TRADEMARK REGISTRATIONS

13.     Mixpac was awarded seven U.S. Trademark Registrations for the look of the mixing tips: U.S. Trademark Registration No. 3,762,232 (yellow), Reg. No. 3,762,233 (teal/green), Reg. No. 3,976,379 (blue), Reg. No. 3,976,380 (pink), Reg. No. 3,976,381 (purple), Reg. No. 3,976,382 (brown) ("the Colored Dome Trademark Registrations"), and Reg. No. 4,051,261 (shape only - no color) (the "Dome Trademark Registration"). Copies of the registration certificates are attached as Exhibit A. The Colored Dome Trademark Registrations and the Dome Trademark Registration are prima facie evidence of the validity of the marks and registration of the marks, and Mixpac's exclusive right to use the marks in connection with mixing tips.

## DEFENDANTS' COUNTERFEIT MIXING TIPS

14.     Defendants have capitalized on the success of the Mixpac mixing tips by copying the distinctive Colored Dome Mark, Candy Colors and the Dome Mark to intentionally confuse purchasers into believing the counterfeit products are manufactured or licensed by Mixpac ("Counterfeit Mixing Tips").  Attached as Exhibit B is an image of one of Defendants' Counterfeit Mixing Tips.

15.     Defendants' mixing tips are counterfeit as they are spurious and are identical with or substantially indistinguishable from Mixpac's Colored Dome Mark and Dome Mark as shown in the Colored Dome Trademark Registrations and the Dome Trademark Registration.

16.     Defendants' copied mixing tips are of lesser quality and safety and reliability, and threaten Mixpac's reputation in its product, to the detriment of Mixpac and the public.

17.     Defendants have sold Counterfeit Mixing Tips on the website eBay.com and delivered the infringing products to this district.

**THIS COURT HAS ENTERED SEVERAL RESTRAINING ORDERS, CONSENT OR DEFAULT JUDGMENTS, AND INJUNCTIONS WHICH CONFIRM THE VALIDITY AND INFRINGEMENT OF THE COLORED DOME MARK, THE DOME MARK, AND THE CANDY COLORS**

18.     In *Sulzer Mixpac v. TPC Advanced Technologies, Inc.*, 08 Civ. 10364 (DC), this Court entered a Temporary Restraining Order against further infringement of the Colored Dome Mark on December 1, 2008, and the Court later entered six consent or default judgments which confirm the validity and infringement of the Colored Dome Mark.   On November 30, 2009 in *Sulzer Mixpac v. Ritter GmbH, NSJ and Peng Waves*, 09 Civ. 9705 (DAB) the Court issued a TRO, followed by the issuance of a Preliminary  Injunction on December 14, 2009, and later a default judgment confirming the validity and infringement of Mixpac's Colored Dome Mark.    In *Sulzer Mixpac USA v.  Purelife Gloves, LLC*, 09 Civ. 10430 (DAB) and *Sulzer Mixpac USA v. Crown Dentalsply et al.*, 10 Civ. 8911 (DAB), the Court entered consent judgments further confirming the validity and infringement of the Colored Dome Mark on May 10, 2011 and April 21, 2011, respectively.   Further, in *Sulzer Mixpac USA v. Rainbow Specialty & Health Products (USA) et al.*, 12 Civ. 6970 (RJS), *Sulzer Mixpac USA v. UC Dental Products, Inc. dba Happystone Dental Supply* 12 Civ. 7863 (LTS), and *Sulzer Mixpac USA v. Spident USA, Inc. and Spident Co., Ltd. et al.*, 12 Civ. 8563 (PAC), the court entered consent judgments confirming the validity and infringement of the

- 5 -

Colored Dome Mark on November 21, 2012, November 27, 2012, and January 23, 2013, respectively.

## COUNT I

## TRADEMARK COUNTERFEITING UNDER 15 U.S.C. § 1114

19.    Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 18 of its complaint.

20.    Defendants have advertised, offered for sale, distributed, or sold mixing tips which are spurious and which are identical with or are substantially indistinguishable from Mixpac's yellow or other color mixing tips as shown in the Colored Dome Trademark Registrations, Reg. No. 3,762,232 (yellow), Reg. No. 3,762,233 (teal/green), Reg. No. 3,976,379 (blue), Reg. No. 3,976,380 (pink), Reg. No. 3,976,381 (purple), Reg. No. 3,976,382 (brown), or the Dome Mark Registration, Reg. No. 4,051,261 (no color).

21.    Defendants' conduct is likely to cause confusion, to cause mistake, and to deceive as to Defendants' affiliation, connection, association, or sponsorship with Mixpac.

22.    Defendants' infringement is willful and with notice of Mixpac's trademark registrations.

23.    Mixpac has no adequate remedy at law. Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to Mixpac. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, statutory damages, damages, and attorney's fees and costs.

## COUNT II

## INFRINGEMENT OF THE REGISTERED COLORED DOME AND DOME TRADEMARKS BY DEFENDANTS UNDER 15 U.S.C. §§ 1125(A) AND 1114

24.    Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 23 of its complaint.

25.    Defendants adopted their trade dress for their mixing tips with knowledge of the Colored Dome Mark and Dome Marks.

26.    Defendants have misleadingly used, and continue to use, a confusingly similar trade dress to the Colored Dome Mark and Dome Mark as shown in the Colored Dome Trademark Registrations and Dome Mark Registration, which is likely to cause confusion, to cause mistake, and to deceive as to Defendants' affiliation, connection, association, or sponsorship with Mixpac.

27.    Defendants' acts are calculated to deceive, or are likely to deceive, the public, which recognizes and associates the Colored Dome Mark and the Dome Mark with Mixpac. Moreover, Defendants' conduct is likely to cause confusion, to cause mistake, or to deceive the public as to the source of Defendants' products, or as to a possible affiliation, connection with or sponsorship by Mixpac.

28.    Defendants' conduct has caused Mixpac to suffer and, unless enjoined by the court, will cause Mixpac to continue to suffer damage to its operation, reputation, and goodwill and will suffer the loss of sales and profits that Mixpac would have made but for Defendants' acts. Defendants have been, and will continue to be, unjustly enriched by their unlawful acts.

29.    Defendants' infringement is willful and with notice of Mixpac's trademark registrations.

30.     Mixpac has no adequate remedy at law. Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to Mixpac. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, damages, and attorney's fees and costs.

## COUNT III

## FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(A)

31.     Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 30 of its complaint.

32.     Defendants' mixing tips use the Colored Dome Mark, Candy Colors, and Dome Mark in such a way as to unfairly compete in the marketplace by drawing a false association between Defendants' products and Mixpac including offering Counterfeit Mixing Tips on the website ebay.com.

33.     Defendants have made false designations of origin and false or misleading descriptions or representations of fact in commercial advertising or promotion which misrepresent the nature, characteristics, qualities, sponsorship, or association with another person's goods, services, or commercial activities in violation of 15 U.S.C. § 1125(a).

34.     Defendants have violated and, upon information and belief, intend to continue to willfully, knowingly, and intentionally violate 15 U.S.C. § 1125(a) by their unlawful acts in a manner that is likely to cause confusion, mistake or deceive as to the nature, characteristics, or qualities of their goods, services, or commercial activities.

35.     Defendants' conduct has caused Mixpac to suffer irreparable harm and, unless enjoined by the Court, will cause Mixpac to continue to suffer damage to its operation, reputation, and goodwill, and will suffer the loss of sales and profits that Mixpac would have

- 8 -

made but for Defendants' acts. Defendants have been, and will continue to be, unjustly enriched by their unlawful acts.

36.     Defendants have willfully made false designations of origin with knowledge and with notice of Mixpac's trademark rights.

37.     Mixpac has no adequate remedy at law. Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to Mixpac. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, damages, and attorney's fees and costs.

### COUNT IV

### VIOLATION OF N.Y. GEN. BUS. LAW § 349

38.     Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 37 of its complaint.

39.     Defendants' acts, including the unauthorized manufacture and distribution of its mixing tips, constitute a violation of General Business Law § 349 because they are likely to cause confusion or mistake, or deceive consumers into thinking that Defendants' and Mixpac's products emanate from the same source. The public has an interest in being able to correctly identify the source of the Mixpac products.

40.     Defendants' conduct has caused harm to the public because their products compromise the health or safety of consumers of dental products or services.

41.     Defendants willfully engaged in one or more deceptive trade practices.

42.     Mixpac has no adequate remedy at law. Defendants' conduct has caused and, if not enjoined, will continue to endanger consumers of dental products or services and

cause irreparable damage to Mixpac. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, damages, and attorney's fees and costs.

## COUNT V

## VIOLATION OF N.Y. GEN. BUS. LAW § 350

43.     Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 42 of its complaint.

44.     Defendants' acts violate General Business Law § 350 because,  by offering copies of Mixpac's products, they falsely represent to consumers and professionals that their products are somehow associated or affiliated with, sponsored, or endorsed by Mixpac.

45.     Defendants' acts and misrepresentations are likely to cause confusion, mistake, or deception as to the source of their products and services.

46.     Should such misrepresentations continue, it will produce an irreparable injury to Mixpac because it allows Defendants to trade off Mixpac's goodwill and unfairly and improperly market their goods through misleading statements.

47.     Defendants' conduct has caused harm to the public because their products compromise the health or safety of consumers of dental services.

48.     Defendants have willfully made false representations with knowledge and with notice of Mixpac's trademark rights.

49.     Defendants' acts have caused, and continue to cause, irreparable harm to Mixpac. Unless this court enjoins Defendants from continuing its unauthorized acts, Mixpac will continue to suffer irreparable harm. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, damages, and attorney's fees and costs.

- 10 -

## COUNT VI

### VIOLATION OF N.Y. GEN. BUS. LAW § 360-1

50.     Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 49 of its complaint.

51.     Defendants' conduct is likely to cause injury to Mixpac's reputation and dilute the distinctive quality of its trademarks.

52.     Mixpac's Colored Dome Mark is highly distinctive and has become well known and widely respected in the dental industry.

53.     Mixpac's products are safe and meet Mixpac's standards for quality and cleanliness.

54.     Mixpac's mixing tips have been properly tested to fit and work effectively with Mixpac's complementary dispensing systems.

55.     Defendants' products may not be safe and do not meet Mixpac's standards for quality and cleanliness.

56.     Defendants' use of Mixpac's Colored Dome Mark on its identical (in appearance), yet substandard, products is likely to cause consumers to believe that Defendants' products emanate from the same source as Mixpac's.

57.     Defendants' unlawful manufacture and distribution of products bearing Mixpac's distinctive trademarks are likely to tarnish Mixpac's image and blur the distinctive quality of its marks.

58.     Defendants' actions threaten to undermine and damage the goodwill and reputation associated with Mixpac's trademark in the eyes of the dental trade industry and general consuming public.

59.     Defendants have willfully made false statements with knowledge and with notice of Mixpac's trademark rights.

60.     Defendants' acts have caused, and continue to cause, irreparable harm to Mixpac. Unless this Court enjoins Defendants from continuing their unauthorized acts, Mixpac will continue to suffer irreparable harm. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, damages, and attorney's fees and costs.

## COUNT VII

## COMMON LAW TRADEMARK INFRINGEMENT

61.     Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 60 of its complaint.

62.     Defendants adopted the look of their mixing tips with knowledge of the Colored Dome Mark, Candy Colors, and the Dome Mark.

63.     Defendants have misleadingly used, and continue to use, a confusingly similar trade dress to the Colored Dome Mark, Candy Colors, and the Dome Mark that is likely to cause confusion, to cause mistake, and to deceive as to Defendants' affiliation, connection, association, or sponsorship with Mixpac.

64.     Defendants' acts are calculated to deceive, or are likely to deceive, the public, which recognizes and associates the Colored Dome Mark, Candy Colors, and the Dome Mark with Mixpac.  Moreover, Defendants' conduct is likely to cause confusion, to cause mistake, or to deceive the public as to the source of Defendants' products, or as to a possible affiliation, connection with, or sponsorship by Mixpac.

65.     Defendants have willfully infringed with knowledge and with notice of Mixpac's trademark rights.

66.    Defendants' acts have caused, and continue to cause, irreparable harm to Mixpac. Unless this court enjoins Defendants from continuing its unauthorized acts, Mixpac will continue to suffer irreparable harm. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, damages, and attorney's fees and costs.

## COUNT VIII

## COMMON LAW UNFAIR COMPETITION

67.    Mixpac realleges and incorporates by reference the allegations in paragraphs 1 through 66 of its complaint.

68.    Defendants' acts constitute unfair competition under common law.

69.    Defendants adopted their trade dress in bad faith as they knowingly, willfully, and intentionally copied the shape and colors of Mixpac's product to trade off Mixpac's labor, expenditures, and good will.

70.    Defendants' mixing tips utilize the Colored Dome Mark, Candy Colors, and the Dome Mark in such a way as to unfairly compete in the marketplace by drawing a false association between Defendants' products and Mixpac.

71.    Defendants have made false designations of origin and false or misleading descriptions or representations of fact in commercial advertising or promotion which misrepresent the nature, characteristics, or qualities of another person's goods, services, or commercial activities.

72.    Defendants' conduct has caused Mixpac to suffer irreparable harm and, unless enjoined by the court, will cause Mixpac to continue to suffer damage to its operation, reputation, and goodwill and will suffer the loss of sales and profits that Mixpac would have

made but for Defendants' acts. Defendants have been, and will continue to be, unjustly enriched by their unlawful acts.

73.     Mixpac has no adequate remedy at law. Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to Mixpac. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, damages, and attorney's fees and costs.

**RELIEF REQUESTED**

Wherefore, Mixpac requests that the court enter a judgment in Mixpac's favor and against Defendants and provide Mixpac the following relief:

A.      Order, adjudge, and decree that Defendants have infringed the Mixpac Colored Dome Mark, Candy Colors and Dome Mark under 15 U.S.C. §§ 1114, 1125(a);

B.      Order, adjudge, and decree that Defendants have committed trademark counterfeiting of U.S. Trademark Reg. No. 3,762,232 (yellow), Reg. No. 3,762,233 (teal/green), Reg. No. 3,976,379 (blue), Reg. No. 3,976,380 (pink), Reg. No. 3,976,381 (purple), Reg. No. 3,976,382 (brown), and/or Reg. No. 4,051,261 (no color) under 15 U.S.C. § 1114.

C.      Order, adjudge, and decree that Defendants willfully and knowingly infringed the Mixpac Colored Dome Mark, Candy Colors, and Dome Mark;

D.      Issue a preliminary and permanent injunctive relief prohibiting Defendants and their respective parents, subsidiaries, principals,

- 14 -

officers, agents, affiliates, servants, attorneys, employees, and all others in privity with them from using any trademark or trade dress which is likely to be confused with the Colored Dome Mark, Candy Colors, and Dome Mark;

E.      Order Defendants to identify and recall from customers and destroy all infringing materials, including but not limited to all packaging and advertising incorporating the infringing trade dress or any other trade dress confusingly similar to the Colored Dome Mark, Candy Colors, and Dome Mark;

F.      Award Mixpac damages for trademark infringement including prejudgment interest and costs against Defendants under 15 U.S.C. § 1117;

G.      Award Mixpac three times its damages to compensate Mixpac under 15 U.S.C. § 1117;

H.      Award Mixpac its reasonable attorney's fees under 15 U.S.C. § 1117;

I.      Award Mixpac statutory damages for trademark counterfeiting pursuant to 15 U.S.C. § 1117; and

J.      Award such other and further relief as the court may deem just.

Dated: New York, New York
        June 9, 2015

                                        s/ Charles D. Cole, Jr.
                                        Charles D. Cole, Jr.
                                        Newman Myers Kreines Gross Harris, P.C.
                                        40 Wall Street
                                        New York, New York 10005-1335
                                        (212) 619-4350

dcole@nmkgh.com

-and-

Michael T. Murphy
Daniel Hwang
Global IP Counselors, LLP
1233 Twentieth Street NW, Suite 700
Washington, D.C. 20036
(202) 293-0585
mmurphy@giplaw.com

Attorneys for Sulzer Mixpac AG